**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**JAMES T. PARKER, II and**
**DEBRA L. PARKER,**

        **Plaintiffs,**

**v.**                                       **Civil Action No.: 4:18cv00140**

**FREEDOM MORTGAGE**
**CORPORATION,** *et al.*,

        **Defendants.**

**PLAINTIFFS' OPPOSITION TO MOTION FOR**
**PROTECTIVE ORDER REGARDING CONFIDENTIALITY**
**DESIGNATIONS OF DEFENDANT, FREEDOM MORTGAGE CORPORATION**

The Plaintiffs, by Counsel, oppose Defendant Freedom Mortgage's Motion for Protective Order Regarding Confidentiality Designations (ECF 24). Because Freedom has not met its burden of showing that confidentiality of some of its documents should be preserved, the Court should deny the Motion.

## I.    OVERVIEW.

Confidentiality should not be taken lightly, as court proceedings are, by default, open to the public. Freedom would stymie this settled notion by having the Court grant confidentiality to documents that are nothing of the kind. Where specific explanations of the reasons to keep information from public view and the resulting harm should the public learn the information, Freedom offers only generalized statements of its own subjective belief that certain information be kept confidential. And it offers no explanation at all of the harm that would result should such information become public. As the discussion below confirms, no such harm is presumed. Freedom has the burden to show such harm, and Freedom has not even attempted to do so.

The idea that confidentiality of information is the exception rather than the rule makes further sense in light of the additional burdens on Plaintiffs and the Court should confidentiality

be handed-out without an appropriate basis. Freedom has designated as confidential its FCRA procedures documents, which will be evidence on one of the key points on summary judgment. Should those baseless designations stand, every summary judgment brief, response, and reply will have a corresponding motion to seal and accompanying documents. The Court should conclude that such docket clutter is not warranted, particularly since Freedom has not shown anything close to what it must to justify confidentiality.

## II.    CASE BACKGROUND.

This is the second case the Parkers have had to file against Freedom because it continues to misreport the status of their mortgage account. Mr. Parker is a 100% disabled veteran, long ago submitted his request to the local tax authority for waiver of his property taxes, received the formal exemption, and provided it to Freedom Mortgage as soon as it assumed servicing of his loan at the end of 2015. (ECF 1 ¶ 14.) Since nearly every action at Freedom is automated, no human being interpreted the exemption and Freedom did not properly apply it to the Parkers' escrow account. Plaintiffs sued, and Freedom eventually settled in June 2017, with the understanding being that Plaintiffs' account would be corrected. It was not.

In February 2018, Freedom sent Plaintiffs letters stating they were behind on their mortgage payments, which was untrue. (*Id.* ¶ 16.) Freedom also reported the supposed delinquencies to Equifax and Experian once again, despite Plaintiffs having made all payments on time and for the correct amount due. (*Id.* ¶¶ 17–18.) Freedom also notified Plaintiffs repeatedly that their mortgage was in default, which was again untrue. (*Id.* ¶¶ 18–19.) Plaintiffs disputed the inaccurate reporting through Equifax and Experian, as well as to Freedom directly. (*Id.* ¶¶ 20, 25.) Nothing helped, so Plaintiffs sued again. They have settled with Equifax and Experian, leaving only Freedom as a Defendant.

While discovery has presented the usual problems with stonewalling defendants, Freedom has here taken the additional step of asking the Court for protection of its confidentiality designations and sealing of that same motion. (ECFs 23, 24.) Freedom has not provided the appropriate basis for either Motion, so the Court should deny them both.[1]

### III.    ARGUMENT AND AUTHORITIES.

#### A.    Standards For Protective Orders.

Federal Rule of Civil Procedure 26 permits an order preventing, among other things, the disclosure of "trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 25(c)(1)(G). To obtain a protective order under Rule 26(c), the moving party must establish that the information sought is covered by the rule and that it will be harmed by disclosure. *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998). "The party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010); *see also Lathon v. Wal-Mart Stores E., LP*, CIV.A. 3:09CV57, 2009 WL 1810006 (E.D. Va. June 24, 2009) ("For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm that will result if no protective order is granted.").

#### B.    Freedom Has Come Nowhere Close To Establishing Confidentiality.

##### 1.    Freedom has failed to show good cause for keeping its letter to Plaintiffs' Counsel confidential.

Freedom's Motion fails at the threshold because it does nothing to establish good cause. Freedom merely states that it treats the documents as confidential and one document mentions the

---

[1] Plaintiffs address Freedom's Motion to Seal in a separate opposition brief.

terms of the earlier settlement between the Parkers and Freedom, so that is enough. (*See* ECF 25 at 5–6 .) It is not.

Good cause in this instance requires Freedom to do more than simply state its subjective preference that information be kept confidential. As to the letter to Plaintiffs' Counsel, Freedom first fails to mention that it redacted the settlement amount from the letter, so the key term about which any settling defendant would be sensitive would not be revealed with a public filing. There would therefore be no prejudice to Freedom should that document be filed on PACER. And, of course, Freedom identifies no such prejudice or injury that would result.

Even beyond that logical conclusion, Freedom does not explain *any* harm that would befall it should anyone learn the amount it paid the Parkers in their earlier settlement. (*See* ECF 25 at 6.) Without such specific showing, the Court should find the post-settlement letter not deserving of confidentiality. *United States ex rel. Davis*, 753 F. Supp. 2d at 565.

### 2.      Freedom has not shown any of the remaining documents deserve confidentiality.

As to the remaining 10 documents, Freedom offers just bland, non-specific statements regarding why they should be kept confidential:

> [E]ach of the documents expressly states on the document itself that it contains proprietary information. Moreover, Freedom Mortgage treats these documents as confidential, as they contain trade secrets concerning Freedom Mortgage's business practices. Accordingly, Freedom Mortgage intends to and does treat these documents as confidential. Having established the confidential nature of these documents, Freedom Mortgage properly designated them as confidential in its document production.

(ECF 25 at 6–7 (citation omitted).) Its Counsel does no better, explaining in his Declaration in support of the Motion only that "Freedom Mortgage treats Exhibits 2 through 12 as confidential,

containing proprietary information, and for internal use only.[2] The redactions in these produced versions of the documents were for attorney-client privilege."[3] (ECF 25-1 ¶ 20.) None of this is sufficient to grant the documents protection, as Freedom must provide more than just generalized statements to gain confidentiality.

Courts, including this one, have concluded again and again that Rule 26(c)'s good cause requirement "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Great Am. Ins. Co. v. Gross*, No. 3:05-cv-159, 2007 WL 1577503, at *12 (E.D. Va. May 30, 2007) (citations omitted); *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) (finding generalized allegations of injury to reputation and relationships with clients insufficient as the moving party was not able to articulate any specific cognizable injury that would flow from dissemination of the materials.); *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204 (8th Cir. 1973) (Under provisions of this rule requiring that "good cause" be shown for a protective order to be issued, the burden is upon movant to show necessity of its issuance, which contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements; such determination must also include a consideration of relative hardship to nonmoving party should the protective order be granted); *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518 (E.D. Wis. 1999), *aff'd*, 280 F.3d 749 (7th Cir. 2002) (holding general injuries from discovery are insufficient to warrant issuance of protective order).

Here, Freedom offers only scant, generalized statements that confidentiality is warranted,

---

[2] Such an attorney declaration is also deficient as it is not of course based on any personal knowledge and counsel is not an available witness. *Souter v. Equifax Info. Servs. LLC*, 299 F.R.D. 126 (E.D. Va. 2014) (Payne) (striking declaration in a non-summer judgment motion holding that the same standard for admissibility must apply).

[3] Freedom has not served a privilege log in this case, so the Court should easily find that any claims of privilege have been waived.

without any specific reasons why or the harm that would result if the public were to view these documents. That is because it cannot make that showing, despite that it has all of the information relating to that showing and it has the burden to do so.

In nearly all competently contested instances, courts have rejected Rule 26(c) protection for FDCPA and FCRA compliance procedures like those Freedom wants protected here. *See, e.g.*, *Zahran v. Trans Union Corp.*, 01 C 1700, 2002 WL 31010822 (N.D. Ill. Sept. 9, 2002); *Ahern v. Zale Corp.*, 301CV02313(DJS), 2002 WL 32114492 (D. Conn. Oct. 23, 2002). There is no credible harm that Freedom can articulate, let alone prove. Information is not worthy of protection under Rule 26(c) merely because it is information that the producing party does not want its competitors to learn or that, if disclosed, would implicate the disclosing party in a fraud. *See Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("Many a litigant would prefer that the subject of the case . . . be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.").

It therefore stands to reason, as courts have held, that a creditor's "office policies and procedures" are not protected as attorney-client communications, work product, or confidential business information. *Fed. Trade Comm'n v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980); *see Zahran*, 2002 WL 31010822, at \*3. In the most-often cited case on the present issues in the context of such a consumer FCRA case, Judge Kay rejected Defendants' present argument:

> The statements in Paragraphs 234 trough 251 do nothing more than state certain of Trans Union's general procedures for resolving errors in credit reports and Trans Union's alleged failure to follow its protocol in the Zahrans' case. (*See generally*, Pl's State. of Facts 234-251.) The Court does not see how the Zahrans' assertions in these disputed paragraphs divulge any Trans Union trade secrets, and to the extent that Paragraphs 234 through 251 refer to certain documents, the Court finds that these documents are undeserving of a protective order, as further explained below.

In all actuality, the portions of the Dispute Training Manual included in the

Zahrans' exhibits, which outline procedures for consumer relations personnel to handle consumer credit disputes, are not rocket science. In the case at bar, the Court is not faced with the disclosure of the actual computer software used to design Trans Union's consumer credit database or the decision-making process that determines how or why certain information is placed on an individual's credit report in the first place.  Here, the Court is only confronted with the data entry of consumer information, complaints, definitions and instructions on how to access consumer dispute history or similar screens. The Court concludes that the function commands, keystrokes, data entry instructions, and general computer codes in the Dispute Training Guide are not a "formula, pattern, device or compilation of information" that gives Trans Union an advantage over competitors. The Court does not see how a competitor will be advantaged if information relating to which keystrokes access which screens in the database is disclosed or if information about which departments handle various consumer inquiries becomes public knowledge.

*Zahran v. Trans Union Corp.*, 01 C 1700, 2002 WL 31010822, at *3; *see also Ahern*, 2002 WL 32114492, at *4 (stating the fact that FCRA defendant "considers documents proprietary and confidential falls short of establishing grounds for a protective order or any recognized immunity from discovery. More than a mere assertion is required to perfect an exemption or immunity from discovery"). As under these authorities, Freedom has failed to show any cause, let alone good cause, for protection or harm that would result absent a protective order.

> **3.    The balance of interests favors disclosure.**

Even if somehow the Freedom would be theoretically exposed to competitive harm, a Rule 26(c) protective order is appropriate only if the moving party's harm is greater than other interests at stake. For Plaintiffs, and for other consumers represented by Plaintiffs' Counsel, catering to Freedom's desire to keep its secrets in-house has a cost and burden. The protective order being sought is meant to totally disrupt the manner in which Counsel and the Court ordinarily litigate a case. *Pintos v. Pacific Creditor's Ass'n,* 504 F.3d 792, 801–03 (9th Cir. 2007). Since dispositive motions are now in play, Plaintiffs must dedicate resources and effort to needless motions to seal,

burdening not only them but the Clerk and the Court as well, who must then wrangle multiple copies of the same pleading and carefully parse what may go into written decisions and orders. And not to mention the delay in proceedings that such motions cause, as in addition to cluttering the docket each filing will now have a built-in lag of time while the motions to seal await rulings.

Beyond the use of the documents by Plaintiffs and their Counsel, there is also a strong public interest in public disclosure of these documents. The well-established presumption is that the public has an overwhelming interest in knowing what is happening in a judicial proceeding. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945–46 (7th Cir. 1999); *Union Oil*, 220 F.3d at 568. Granting Freedom's request is unworkable, is inconsistent with the public's interest in access to judicial proceedings, and generally the antithesis to the general presumption that court proceedings be open and transparent. *See Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings.").

The presumption of public access extends to pretrial discovery absent "compelling reasons [] for denying the public access to the proceedings." *Id.*; *Citizens First*, 178 F.3d at 945–46. This is especially true in this instance, as the documents Freedom wants to keep secret pertain to its FCRA compliance procedures, which pertain to the mortgage accounts of every consumer whose account Freedom services. State judges, government regulators, and other effected consumers are stakeholders in this dispute and the harm from disclosure that goes unaddressed in Freedom's memorandum cannot outweigh these more important interests.

## IV.    CONCLUSION.

For the reasons stated above, Plaintiffs respectfully request that the Court deny Freedom's Motion and order its designations of confidentiality on the subject documents removed.

September 16, 2019.

Respectfully submitted,

**PLAINTIFFS James Parker II and
Debra Parker**

By_____/s/_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
Elizabeth W. Hanes, VSB #75574
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: elizabeth@clalegal.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2019, I will cause a true and correct

copy of the foregoing to be filed electronically using the CM/ECF system, which will then send a

notification of such filing to all Counsel of Record.

_____/s/_____
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com