IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
(Newport News Division)

| | |
|---|---|
| JAMES T. PARKER, II, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No: 4:18-cv-00140-HCM-DEM |
| ) | |
| FREEDOM MORTGAGE ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FREEDOM MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' RULE 37 MOTION TO COMPEL**

Defendant Freedom Mortgage Corporation ("Freedom Mortgage"), by and through counsel, submits this Opposition to Plaintiffs' Rule 37 Motion to Compel ("Motion to Compel"). Plaintiffs' Motion fails to provide a basis for this Court to compel any of the four categories of evidence they seek. Plaintiffs have likewise failed to provide any argument excluding such evidence. Finally, Plaintiffs fail to provide a basis for the award of attorney's fees. The Motion should be denied.

**OVERVIEW**

Plaintiffs assert claims against Freedom Mortgage for alleged violations of the Fair Credit Reporting Act ("FCRA") and Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs' claims are grounded upon allegations that Freedom Mortgage, the servicer for Plaintiffs' mortgage loan, failed to conduct a reasonable investigation and correct allegedly inaccurate information it furnished to the credit reporting agencies (the "CRAs") regarding a $559.30 delinquency on Plaintiffs' mortgage loan account. Specifically, Freedom Mortgage provided information to the CRAs that Plaintiffs were delinquent beginning June 2017 when Plaintiffs

failed to pay $559.30 to bring their account current after resolving prior litigation with Freedom Mortgage. Plaintiffs were delinquent at that time because they had failed to pay increased monthly payments covering interest rate adjustments and escrow from early 2016 through June 2017. Freedom Mortgage notified Plaintiffs and their counsel in writing of the amount required to bring their account current as of June 2017. Plaintiffs nevertheless failed to make the payments, remained delinquent on their account, and were accurately reported as delinquent by Freedom Mortgage to the CRAs.[1]

To prevail on their FCRA claims, Plaintiffs must prove that the information Freedom Mortgage furnished to the CRAs was factually inaccurate. Plaintiffs cannot do so. The undisputed facts of record demonstrate that Plaintiffs were delinquent due to their failure to pay the amount required to bring their account current. As such, Freedom Mortgage can have no liability under the FCRA because the information it furnished was factually accurate. Freedom Mortgage has moved for summary judgment on all claims asserted against it.[2]

As Freedom Mortgage's Motion for Summary Judgment demonstrates, Plaintiffs' have no claim against Freedom Mortgage for FCRA violations, let alone a claim for punitive damages. Thus, the evidence Plaintiffs' seek by their present motion is simply irrelevant to their claim, since they cannot even demonstrate inaccurate reporting by Freedom Mortgage.

Furthermore, Plaintiffs' Motion is factually unsupported, and relies on inaccurate statements concerning the evidence in an attempt to obscure the fact that Freedom Mortgage

---

[1] Freedom Mortgage has already supplied a Statement of Undisputed Facts in support of its Motion for Summary Judgment and incorporates it by reference rather than re-stating the entire history of the dispute herein. *See* Dkt. 40.

[2] Freedom Mortgage also moved for summary judgment as to Plaintiffs' RESPA claim. As that is not the focus of Plaintiffs' Motion, it is not addressed here.

accurately reported Plaintiffs' account.[3] For instance, Plaintiffs continue to make allegations that at Freedom Mortgage "every action is automated." Again, Plaintiffs have deposed four Freedom Mortgage employees, and yet fail to cite a single statement as to "automated" processes. To the contrary, Freedom Mortgage's witnesses provided testimony as to how the amount due on Plaintiffs' loan was calculated, but Plaintiffs pretend that such an amount was a result of "automated system." *See* Exhibit 1 at 35:24-36:19; 50:23-52:17. Plaintiffs' statement that the amount due has never been explained or established is also incorrect. *See* Dkt. 39-3 and 39-7 and Exhibit 1 at 58:17-68:6. Indeed, Plaintiffs' case is largely unsupported allegations, which fail in the face of Freedom Mortgage's accurate reporting.

The facts of this case are that Freedom Mortgage clearly communicated to the Plaintiffs and their counsel the amount outstanding to bring their account current beginning in June 2017.[4] Dkt. 39-14 at p. 51, 39-19 and 39-20. Plaintiffs admit that they received these notices and turned them over to their counsel. Dkt. 39-17 at p. 8 and Dkt. 39-14 at 137:13-138:3. However, Plaintiffs' counsel never contacted Freedom Mortgage. Dkt. 39-17 at p. 7-15. Instead, Plaintiffs waited eight months before presenting Freedom Mortgage with a qualified written request

---

[3] For instance, Plaintiffs' allegation that none of Freedom Mortgage's witnesses could explain the basis for the escrow shortages is false. Both Freedom Mortgage's 30(b)(6) witness and Tanya Tarver testified that the escrow shortage was a result of under collection of escrow by the prior loan servicer. *See* Deposition Transcript Excerpts of Freedom Mortgage's 30(b)(6) witness Mark Phillips attached hereto as Exhibit 1 at 50:23-52:17. Tanya Tarver also provided testimony concerning this issue, but Plaintiffs have yet to forward her deposition transcript. Freedom Mortgage will supplement this filing with the relevant excerpts upon receipt of the transcript.

Indeed, Plaintiffs have deposed four Freedom Mortgage witnesses at this point. Yet their Motion is replete with unsupported factual assertions. This is because no support for these propositions exist and the Court can discount each unsupported fact assertion.

[4] Plaintiffs' counsel admits that they never informed Plaintiffs of the amount required to bring their account current in June 2017. Dkt 39-18 at p. 21. Plaintiffs' counsel also never contacted Freedom Mortgage or Freedom Mortgage's counsel for clarification regarding the amount due. Dkt. 40 at ¶ 27. Plaintiffs testified that they relied on their counsel to advise them of the amount they needed to pay, and it appears that Plaintiffs' simply ignored the facts before it, to Plaintiffs' detriment. There is no evidence in the record that Plaintiffs' counsel ever conducted an investigation of the amount due such that Plaintiffs could credibly dispute it.

("QWR") and credit reporting disputes.[5] Dkt. 40 at ¶¶ 35-36. Plaintiffs then filed this suit just five months after receiving responses to their disputes and QWR, without ever following up with Freedom Mortgage.

Plaintiffs underpaid their mortgage for over a year, yet Plaintiffs ignore this evidence and without any support state "Plaintiffs made the actual payments owed on time and every month." Plaintiffs make this assertion despite admitting when confronted with their records that they would have to investigate why they failed to adjust payments for an interest rate increase. Dkt. 39-14 at 155:1-156:24.

Plaintiffs' complete lack of damages is also detrimental to their claim and instant Motion. Plaintiffs admit that they have "exceptional" credit scores. Dkt. 40 at ¶ 45 and Dkt. 39-14 at 104:2-105:21. Moreover, during the pendency of this lawsuit they applied for and received a new line of credit with zero percent interest. *See* Deposition Transcript Excerpts of James Parker attached hereto as Exhibit 2 at 93:6-94:5 Furthermore, Plaintiffs confirmed that an increase to an insurance policy premium was not a result of Freedom Mortgage's credit reporting. Id. at 159:22-160:13. And while Plaintiffs allege that Mr. Parker's medical condition may have been impacted by the dispute, they have refused to produce any medical records which would confirm, let alone allow a factfinder to test, such an opinion. Indeed, Plaintiffs' protestations regarding evidence supporting punitive damages are incredulous given the absence of evidence of damages.

In this case, Freedom Mortgage accurately reported a delinquency on Plaintiffs' account. Plaintiffs, to their detriment, relied on advice from their counsel, and continue to do so by

---

[5] Plaintiffs sent their credit reporting disputes the same date as the qualified written request, confirming that it did not matter what response they received to the QWR. *See* Compl. ¶ 25 and Dkt. 40 at ¶ 35 (admitting that the QWR and credit reporting disputes were both submitted on April 30, 2018).

4

pressing forward in this matter where they have incurred no damages. As discussed below, the evidence Plaintiffs seek will not rescue their claims and is largely irrelevant. Finally, Plaintiffs' claim for attorney's fees is unsupported by the record. The motion should be denied.

## I. **ARGUMENT**

Plaintiffs seek to compel production of four categories of documents from Freedom Mortgage: (1) documents concerning Freedom Mortgage's net worth; (2) information regarding the pay rates of certain Freedom Mortgage employees; (3) recordings of telephone calls involving Plaintiffs; and (4) Freedom Mortgage documents that have been redacted to protect attorney-client communications. The Court should deny Plaintiffs' requests as to all four categories of documents as well as Plaintiffs' request for attorney's fees.

### A. **Plaintiffs Are Not Entitled To Information Regarding Freedom Mortgage's Net Worth.**

The Court should deny Plaintiffs' request to obtain information regarding Freedom Mortgage's net worth because that information is irrelevant at this stage of the proceedings. Freedom Mortgage's net worth can only be relevant if Plaintiffs have a claim for punitive damages. Here, while Plaintiffs have pleaded punitive damages, they have not adduced any evidence in support of their claim. Indeed, Freedom Mortgage has moved for summary judgment as to that claim given the lack of factual dispute. Accordingly, the Court should not require Freedom Mortgage to produce net worth information while that summary judgment motion is pending.

Courts in the Fourth Circuit have frequently paused discovery into a defendant's net worth until the plaintiff's claim for punitive damages has survived summary judgment. *See Tiller v. Hobart Corp.*, 58 F. Supp. 2d 688, 691 (W.D. Va. 1999) ("it might be appropriate to prohibit discovery as to the defendant's net worth until a decision has been rendered on a motion

5

for summary judgment as to whether the punitive damage issue will go to trial"); *Jackson-Heard v. Elizabeth City State Univ.*, No. 2:12-CV-8-BO, 2013 WL 594896, at *2 (E.D.N.C. Feb. 15, 2013) (while it "is undisputed that a defendant's financial position or net worth is relevant to the issue of punitive damages . . . a number of courts have required a prima facie showing of entitlement to punitive damages before requiring production of sensitive financial information"); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C.1993) (deferring production of financial information until after punitive damages claim survives a motion to dismiss or for summary judgment); *see also Dodgson v. First Advantage Background Servs. Corp.*, No. 1:16-CV-1894-ODE, 2019 WL 2306131, at *4 (N.D. Ga. Mar. 7, 2019) ("Because the report is technically accurate and thus may not serve as the basis for willful FCRA violation, punitive damages are not available and evidence regarding Defendant's current net worth or financial condition is irrelevant.").

Moreover, many of the cases cited by Plaintiffs in support of obtaining net worth information are readily distinguished from the facts here. In *Saunders v. Equifax Info. Servs., L.L.C.*, 469 F. Supp. 2d 343, 352 (E.D. Va. 2007), *aff'd sub nom. Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142 (4th Cir. 2008), for example, the court considered net worth information because the matter turned on whether a punitive damages award was excessive, not on the discovery of net worth prior to a finding of willfulness. Similarly, in *Cappetta v. GC Servs. Ltd. P'ship*, No. CIV. A. 3:08CV288, 2008 WL 5377934, at *6 (E.D. Va. Dec. 24, 2008), the court's decision turned on the fact that it had previously ordered the production of net worth information, but the court did not delve into the reason why the production was necessary. Other cases cited by Plaintiff contain even less analysis. *See, e.g., Thach v. Equifax Info. Servs., LLC*,

Civ. 3:14cv70 (E.D. Va. Sept. 8, 2014) (motion to compel net worth information denied *as moot*).

Even if Plaintiffs' claim for punitive damages could survive summary judgment, Freedom's net worth would still be irrelevant here because the United States Constitution caps the amount that can be awarded as punitive damages at approximately ten times the amount of compensatory damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). Here, Plaintiffs have failed to establish any damages. Freedom Mortgage has not charged any additional fees to Plaintiffs' account. Exh. 1 at 92:8-93:11. Plaintiffs have "exceptional" credit. Dkt. 40 at ¶ 45 and Dkt. 39-14 at 104:2-105:2. Plaintiffs have been able to obtain a favorable additional line of credit since they reported their dispute. Exh. 2 at 93:6-94:5. All that is left is a possible claim that Freedom Mortgage's calculation was inaccurate. That would mean Plaintiffs' damages amount to $559. Thus, the total amount of punitive damages that could be assessed against Freedom Mortgage is around $6,000—a number irrelevant to any corresponding figure for Freedom Mortgage's net worth.

Thus, because the potential compensatory damages in this matter are low and the Constitution prohibits disproportionate punitive damage awards, the factfinder will have no reason to assess Freedom Mortgage's net worth when considering potential punitive damages. In other words, the low ceiling for potential compensatory damages in this case has made Freedom Mortgage's net worth irrelevant to the punitive damages assessment. For these reasons, the Court should deny Plaintiff's motion to compel as to net worth information.[6]

---

[6] Even if the Court concludes such evidence is discoverable while a Motion for Summary Judgment is pending, Freedom Mortgage expressly reserves the right to limit the introduction of such evidence at trial.

**B.     The Pay Rate Of Freedom Mortgage's Witnesses Are Irrelevant.**

Plaintiffs are not entitled to discover the pay rates of Freedom Mortgage's employees because such information is irrelevant to the main issue in this action—whether Freedom Mortgage accurately reported Plaintiffs account and then conducted a reasonable investigation of Plaintiffs' credit disputes. Rule 26 provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [among other things] . . . the importance of the discovery in resolving the issues"). Fed. R. Civ. P. 26(b)(1). Here, the pay rates of Freedom Mortgage's employees have no bearing on whether Freedom conducted a reasonable investigation into Plaintiffs' credit disputes. Accordingly, the Court should deny Plaintiffs' request.

Plaintiffs assert that the pay rates of the two Freedom Mortgage employees who investigated Plaintiffs' credit reporting disputes are relevant because "such information is pertinent to how Freedom conducted FCRA investigations" and the pay rates indicate "how much time an investigator is expected to spend on a dispute." Dkt. 43 at 8. Plaintiffs' assertions are baseless. The hourly wage of an investigator is unrelated to the amount of time the investigator spends on the dispute or the thoroughness of his or her investigation. The hourly pay rate, whether high or low, does not reveal how much time Freedom Mortgage's investigators spent on their investigation of Plaintiffs' disputes.[7] Indeed, if anything, a lower pay rate would allow Freedom Mortgage to spend *more* time addressing a credit dispute at the same cost to the company. Moreover, because employee wage rate information is irrelevant, discovery of this information is not proportional to the needs of this case. *See Doe v. Old Dominion Univ.*, 289 F.

---

[7] Likewise, using the average time spent investigating a credit dispute glosses over the fact that other disputes may have been less complex than Plaintiffs, thus requiring less time to investigate. Thus, the average number of disputes processed per hour is also not relevant.

Supp. 3d 744, 749 (E.D. Va. 2018) ("discovery must be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues . . . ."); *Acosta v. Med. Staffing of Am., LLC*, No. 2:18CV226, 2019 WL 911268, at *1 (E.D. Va. Feb. 20, 2019) ("inasmuch as such matters have apparently been addressed in prior written discovery, these topics as originally drafted are not proportional to the needs of this case").

Furthermore, the hourly pay rate information sought by Plaintiffs presumes a faulty formula of calculating the cost of an investigation. Plaintiffs seek to divide the hourly rate of Freedom Mortgage's employees by the time they spent on their investigation to create a materially misleading number they would claim is the cost of an investigation. However, such a number does not account for the fixed costs (such as for the building, software and equipment) that Freedom Mortgage must incur before it can even respond to a credit dispute.[8] Moreover, the number excludes additional costs concerning the employees such as recruitment, development and training. Additionally, the number presumes that only the involvement of the employees conducting the investigation is a cost to Freedom Mortgage. This is also a faulty premise. Each of the employees has supervisors who oversee the credit reporting disputes – and their training, development and compensation are a cost to Freedom Mortgage. Moreover, the procedures used by the employees to investigate were a cost to Freedom Mortgage. Additionally, these procedures were developed by Freedom Mortgage's legal and compliance departments. Exhibit 1 at 97:20-99:22. The procedures are also revised on a regular basis. Id. Accordingly, a portion

---

[8] Indeed, Freedom Mortgage's 30(b)(6) only accepted Plaintiffs' counsel's calculations concerning relevance of an investigator's hourly rate for purposes of counsel's exercise. The witness did not accept that Freedom Mortgage's only cost for the investigations was the employee compensation. See Exh. 1 at 116:11 - 117:3

9

of the expenses for each of these individuals in legal and compliance would be part of the cost to Freedom Mortgage to conduct investigations. Excluding all of these additional costs and just using the pay rate of the individuals conducing the credit dispute investigations fails to calculate the actual costs to Freedom Mortgage. Thus, Plaintiffs seek discovery concerning a number which would be misleading and of no value to a factfinder since it does not actually represent the cost of anything.[9]

For these reasons, the Freedom Mortgage employee pay rates are irrelevant and thus not discoverable. *See Hallford v. California Dep't of Corr.*, No. CIVS050573FCDDADP, 2010 WL 921166, at *2 (E.D. Cal. Mar. 12, 2010) (denying motion to compel "a copy of salary schedules for [defendants'] employees . . . [because] plaintiff [has not] made a satisfactory showing that the information he seeks is relevant to the merits of his claims or request for damages in this case.").

Not surprisingly, Plaintiffs have not cited any authority for the proposition that a credit reporting dispute investigator's pay rate is relevant to the reasonableness of his or her investigation. Plaintiff does cite *Johnson v. MBNA*, 357 F.3d 462, 430 (4th Cir. 2004), for the proposition that the pay rate of the investigators is directly related to the speed at which they pursue investigations. Dkt. 43 at 8-9. However, a close reading of Plaintiffs' brief reveals only that Plaintiffs' counsel once made this argument at trial, not that the court accepted the argument or agreed that it made any sense. For it does not—an investigator's hourly wages are unrelated to how quickly he or she can complete an investigation. Likely for this reason, the *Johnson* court evaluated the reasonableness of the investigation at issue there based on the number of investigations completed per hour, not the pay rate of the investigators.

---

[9] Even if the Court concludes such evidence is discoverable, Freedom Mortgage expressly reserves its objections to this evidence as misleading for a Motion in Limine.

Plaintiffs' cite to *Cushman v. Trans Union Corp.*, 115 F.3d 220, 222 (3rd Cir. 1997), fares no better. There, the court mentioned the investigator's wages as an aside in the fact section of its opinion, but (properly) focused its analysis on what the defendant actually did to investigate the dispute. *See Cushman*, 115 F.3d at 222 ("There is no evidence that [defendant] took the necessary steps to obtain access to pertinent documents from the credit grantors that would enable [defendant] to perform a handwriting comparison" to determine if a fraud had been perpetuated). Plaintiffs' final case, *Beck v. Equifax Info. Serv., LLC*, 1:05-cv-347 (E.D. Va. Aug. 26, 2005), also does not support Plaintiffs' assertions because the court there only allowed the plaintiff to discover information regarding bonuses paid to credit reporting agency employees after those employees had testified that their bonuses were based on the speed at which they processed disputes. Here, Freedom Mortgage is not a credit reporting agency, and there is no indication that its employees receive bonuses for speeding through disputes, so the unreported *Beck* decision is not even persuasive authority. Indeed, Freedom Mortgage's employees testified that their compensation is not tied to the number of disputes they process hourly. *See* Deposition Transcript Excerpts of Juana Cambron attached hereto as Exhibit 3 at 15:9-16:8 and Deposition Transcript Excerpts of Angela Flores attached hereto as Exhibit 4 at 17:22-20:5

Finally, while Plaintiffs' counsel represents that he met and conferred concerning this issue, he overlooks certain representations made during those conferences. Plaintiffs' counsel affirmatively offered to provide the legal authorities supporting his position that employee compensation was relevant to Freedom Mortgage's counsel for consideration. Undersigned counsel requested the authorities in order to consider their impact. However, Plaintiffs' counsel never produced any authority prior to filing the instant motion.

Considering the lack of supporting authority for Plaintiffs' request for employee pay rates, and Plaintiffs' misleading justification for needing this information, it appears that Plaintiffs lack a legitimate purpose to seek the private wage information. Accordingly, as Plaintiffs' request is not for relevant discoverable information and for the reasons described above, the Court should deny Plaintiffs' Motion to Compel as to the pay rates of Freedom Mortgage's employees.

### C. Plaintiffs' Request For Recordings Is Improperly Before The Court.

Plaintiffs' request for the call recordings should be denied because Plaintiffs' counsel did not seek to meet and confer with Freedom Mortgage's counsel before filing the Motion to Compel. *See* Local Rule 37(E) ("No motion concerning discovery matters may be filed unless counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy.") The existence of the calls was first discovered during a deposition on September 13. Despite numerous emails from Plaintiffs' counsel after that deposition, they did not raise the issue of Freedom Mortgage's production of the recordings prior to filing the instant motion. Therefore, because Plaintiff's counsel has not sought to meet and confer with Freedom Mortgage's counsel regarding this issue, the motion must be denied as to the call recordings. Indeed, Freedom Mortgage consents to produce any call recordings concerning Plaintiffs it locates, although it notes that it did object to the relevance of communications from prior to June 2017. Accordingly, Plaintiffs' motion with regards to the call recordings is both improper and moot.

### D. Freedom Mortgage Is Entitled To Redact Documents For Privilege.

The Court should deny Plaintiffs' request to compel the production of documents that have been redacted for privilege. First, Plaintiffs have waived their right to challenge the

redactions because they did not bring a motion to compel before the close of discovery. Next, Plaintiffs fail to provide any basis for the disclosure of information redacted for attorney-client privilege.

The Scheduling Order in this matter required Plaintiffs to complete discovery by August 13, 2019. Dkt. 16, p. 2. Plaintiffs were aware long before that cut-off that Freedom Mortgage had redacted documents in its document production for attorney-client privilege. Yet, Plaintiffs did not move to compel the production of the un-redacted documents. Because of this lapse, Plaintiffs waived their right to compel the un-redacted documents. *See Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 12547260, at *2 (E.D. Va. July 31, 2014) (denying late-filed motion to compel and observing that "[c]ourts in this district have repeatedly held that a motion to compel filed after the close of discovery and after the expiration of the motion deadline in the scheduling order is untimely") (quoting *RDLG, LLC v. RPM Grp., LLC*, No. 1:10CV204, 2012 WL 3202851, at *1 (W.D.N.C. Aug. 6, 2012). Moreover, to the extent Plaintiffs now seek a continuance of the discovery deadline, the Court should deny the request because the "failure on the part of counsel to proceed with the normal process of discovery shall not constitute good cause for an extension or continuance." Local Rule 16. Plaintiffs sat on whatever rights they had to compel production of these documents. Thus, now that discovery has closed, they cannot make amends for their dalliance by seeking to compel them more than a month after the deadline has passed.

Plaintiffs' claim for Freedom Mortgage's privileged documents fails on the merits as well. Plaintiffs argue that Freedom Mortgage improperly redacted documents for relevance. However, that is not the case. Freedom only redacted for relevance in once instance—for account notes from the period post-dating the filing of Plaintiffs' complaint. Clearly, any

account notes entered after the complaint was filed are irrelevant to Freedom Mortgage's conduct from *before* the complaint was filed.

All of Freedom Mortgage's remaining redactions were made to protect information protection by the attorney-client privilege.[10] Indeed, Freedom's privilege redactions are limited to (1) account notes reflecting attorney communications concerning Plaintiffs' prior litigation with Freedom Mortgage and (2) internal policies and procedures documents reflecting attorney advice relating to Freedom Mortgage's business operations.[11] Freedom Mortgage's redactions for privilege were proper and noted in its responses to Plaintiffs' requests for production, and the production of a redacted document does not waive a claim of privilege as to the redacted material. *See Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 523 (E.D. Va. 2017) ("Parties are generally entitled to assert privilege and redact records in connection with motions . . . .") Moreover, to the extent the Court has any question as to the validity of Freedom Mortgage's privilege redactions, Freedom Mortgage would be willing to submit the unredacted versions of the documents to the Court for *in camera* review. *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 61, 68 (E.D. Va.), *order aff'd in part, modified in part*, 178 F.R.D. 456 (E.D. Va. 1998) ("the federal common law of attorney-client privilege allows this Court to conduct an in camera review of the documents for which [a party] is claiming the attorney-client privilege."). Likewise, while Plaintiffs' seek disclosure of these documents, when presented with a 30(b)(6) witness familiar with the procedures, they did not introduce them as exhibits and

---

[10] Some redactions were made with regards to personal private information, including social security numbers of Plaintiffs. Freedom Mortgage does not object to producing these documents without redacting the personal private information for use at trial to the extent Plaintiffs request as such.

[11] Plaintiffs' contention that this information is subject to the Protective Order in this matter is belied by the fact that Plaintiffs have opposed the very confidentiality designations entitling these documents to protection. *See* Dkt. 50.

did not ask a single question. Dkt. 55-3 at ¶ 9. Accordingly, Plaintiffs' protestations regarding their necessity in un-redacted form ring hollow.

Because the redactions in Freedom Mortgage's productions were for privilege and not for relevance, Plaintiffs' arguments regarding the validity of relevance redactions are themselves irrelevant. Therefore, the Court should deny Plaintiffs' Motion as to Freedom's redactions.

### E.     Plaintiffs Lack A Basis To Seek Attorneys' Fees.

The Court should summarily reject Plaintiff's baseless request for attorney's fees. Rule 37(a) provides that "the court must not order [] payment [of attorneys' fees] if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). The applicability of any one of those three subparts would preclude an award of attorneys' fees. Here, however, *all three* of them go against Plaintiffs' cavalier request for attorney's fees, rendering the request absurd in addition to being unsupported.[12]

First, Plaintiffs have not made a good faith effort to obtain the requested discovery materials without court action as required by Rule 37(a)(5)(B)(i). Plaintiffs moved to compel the production of the telephone call recordings without first meeting or conferring with Freedom Mortgage's counsel. *See Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 7185199, at *4 (E.D. Va. Dec. 16, 2014) ("reasonable expenses may not be awarded if the

---

[12] Plaintiffs' reference to prior unrelated litigation between counsel regarding discovery issues is entirely without merit and materially misleading. The discovery issues in that case were not the same as in this case. The plaintiff in that case did not file a motion to compel, and did not brief any of the issues in this motion. There was no discussion of employee compensation, call recordings, or redactions for attorney-client privilege. The only overlapping issue concerned net worth of the client for punitive damages. As concerns that issue, there was no briefing offered by any party other than undersigned counsel's Motion to Bifurcate Trial. It is patently false for Plaintiffs' counsel to allege that there are any offenses, given that he cannot identify a single one from that case.

movant filed the motion before attempting in good faith to obtain the discovery without court intervention"). In addition, Plaintiffs filed this Motion to Compel production of un-redacted documents well *after* the deadline imposed in the Case Scheduling Order. It would be improper to award attorney's fees here, where Plaintiffs failed to make any effort to obtain the documents before filing a motion to compel.

Second, for the reasons described above, Freedom Mortgage was "substantially justified" in refusing to turn over the privileged material that had been redacted. Freedom Mortgage was also substantially justified in refusing to turn over net worth information and employee pay rate information because both of those pieces of information are irrelevant to this action, especially while a Motion for Summary Judgment is pending. *See* Rule 37(a)(5)(B)(ii); s*ee also Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1359–60 (E.D. Va. 1987) (court granted "motion to compel the production of tape recordings" while denying "request for an award of expenses and attorneys' fees in reference to this motion").

Finally, it would be unjust to award attorneys' fees here because Plaintiffs' counsel stated to Freedom Mortgage's counsel that he would provide the authority for Plaintiffs' position regarding employee pay rates, which Freedom Mortgage's counsel promised to review. However, instead of providing the promised authority, Plaintiffs' counsel filed this Motion to Compel first, without giving Freedom's counsel any opportunity to evaluate the authority against the pending objections. Accordingly, an award of attorneys' fees is not merited. *See* Rule 37(a)(5)(B)(iii). And to the extent Plaintiffs seek attorney's fees for discovery objections to which they have not moved to compel, there is simply no basis for any such award. Thus, for each of these reasons, the Court should deny Plaintiffs' request for attorneys' fees.

## II.     **CONCLUSION**

For all the foregoing reasons, Defendant Freedom Mortgage Corporation respectfully requests the entry of an Order: (a) denying Plaintiffs' Motion to Compel; (b) denying Plaintiffs' request for attorneys' fees; and (c) granting such further relief in favor of Defendant as this Court deems necessary and just.

                                           Respectfully submitted,

/s/  *Walter Buzzetta*
Walter J. Buzzetta, Esq. (68006)
STRADLEY RONON STEVENS & YOUNG, LLP
2000 K Street, NW, Suite 700
Washington, D.C.  20006
(202) 507-6407 (direct) / (202) 822-0140 (fax)
wbuzzetta@stradley.com

and

Andrew K. Stutzman, Esq. *(admitted pro hac vice)*
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 1600
Philadelphia, PA 19103
215-564-8008 (direct) / 215-564-8120 (fax)
astutzman@stradley.com

*Attorneys for Defendant*
*Freedom Mortgage Corporation*

Date:  September 30, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2019, I caused the foregoing Opposition to Plaintiff's Motion to Compel with Exhibits to be electronically filed with the Clerk of the Court, which caused it to be served on all counsel of record.

/s/ *Walter Buzzetta*
Walter J. Buzzetta