UNTED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

JAMES T. PARKER, II and
DEBRA L. PARKER,

        **Plaintiffs,**

v.                                                Civil Action No.: 4:18cv00140

FREEDOM MORTGAGE
CORPORATION, *et al.*,

        **Defendants.**

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL UNDER RULE 37**

Defendant's opposition to the Parkers' Motion to Compel is illustrative of the manner in which Freedom Mortgage has litigated this case specifically and handled its problems in servicing the Parkers' loan generally. Freedom essentially argues that it should not have to provide any of the core discovery sought because it believes (or claims to believe) that it never made a servicing error in the first place and therefore intends to win the case without having to produce any of the evidence at issue. The first four pages of its brief are simply a regurgitation of the narrative it cut and pasted from its Summary Judgment brief.

Defendant is wrong. It is liable. It harmed the Parkers. But litigation of a Motion to Compel is not the proper posture for that determination.

What is missing from Freedom's opposition is any explanation as to why it cannot easily produce the evidence requested. It has not suggested, let alone established, any burden. Instead, its only opposition arguments are based on admissibility or relevance.

**I.    AN FCRA DEFENDANT'S NET WORTH
AND RELATED FINANCIALS ARE UNIVERSALLY DISCOVERABLE.**

As detailed in Plaintiffs' opening brief, the FCRA provides a low threshold willfulness remedy that entitles prevailing consumers to punitive damages. 15 U.S.C. § 1681n; *Wood v. Credit*

*One Bank*, 277 F. Supp. 3d 821, 846 (E.D. Va. 2017) ("In *Safeco*, the Supreme Court interpreted the meaning of "willfulness" in the context of 15 U.S.C. § 1681n as covering "not only knowing violations of [the statute], but reckless ones as well." 551 U.S. at 57, 127 S. Ct. 2201 ("The standard civil usage [of the term willful] thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations."). As Judge Payne has explained, because "summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind,' courts have frequently held that willfulness is a question of fact for the jury." *Thomas v. FTS USA, LLC*, No. 3:13-cv-825, 2016 WL 3653883, at *9 (E.D. Va. June 30, 2016) (citation omitted).

While Freedom is obviously (and irrationally) hopeful that it can avoid a jury trial here, discovery of a its net worth and financial statements cannot wait for the end of the trial. Plaintiffs need to examine and confirm the financial statements for reliability and to integrate them into their trial plan. Accordingly, this is why 100% of the time in this District when the issue has been determined, the FCRA defendant has been compelled to produce its net worth.

Plaintiffs have offered Freedom a stipulation as to net worth, to be limited to this case and admitted only if the willfulness claim goes to the jury. Such stipulation is based upon news accounts in 2018 which suggest that Freedom Mortgage Corporation is worth between $1 Billion and $1.5 Billion. *See* Wall St. Journal, *The New Mortgage Kinds: They're Not Banks*, Sept. 6, 2018, *available at* https://www.wsj.com/articles/the-new-mortgage-kings-theyre-not-banks-1536242400 (last visited Sept. 30, 2019 ("While some other large nonbank lenders are backed by private-equity money, Mr. Middleman and related trusts own Freedom, estimated to be worth between $1 billion and $1.5 billion, according to people familiar with it.")). If Freedom would stipulate to a Net Worth at the lower of this estimated range—$1 billion—the document production

Freedom seeks to avoid would be unnecessary. Yet Freedom will not stipulate, necessitating the need for Plaintiffs' Motion and the Court's assistance on obtaining this wrongfully withheld information.

Freedom's remaining arguments are unpersuasive. Every decision Plaintiffs offered was in a case brought under the FCRA and exactly on point. None can be distinguished. For example, in *Saunders v. Branch Banking and Tr. Co. Of VA*, 526 F.3d 142 (4th Cir. 2008), the very text of the Fourth Circuit's decision explains why net worth is relevant. The other cited cases rejected the same defense arguments Freedom now asserts. Freedom cannot cite one case in this District that supports its refusal to produce.

Freedom's innovative argument is that punitive damages high enough to implicate its net worth will not be available to the Parkers because they do not have sufficiently high actual damages. (ECF 62 at 7.) Freedom's statement of this argument suggests it did not in fact read the Fourth Circuit's *Saunders* decision discussed in both preceding briefs. In *Saunders*, present Plaintiffs' counsel also represented the consumer claimant. Unlike here, Mr. Saunders did not have *any* actual damages. Like here, the lender disagreed with the consumer's dispute, but failed to report the dispute to the credit bureaus contending that it was not supported by the lender's records. The plaintiff sought and the jury awarded statutory damages—mandatory between $100 and $1,000. The jury also awarded punitive damages of $80,000, which became the subject of the appeal. The defendant made the same argument as does Freedom, which the Fourth Circuit entirely rejected:

> Punitive damages awards that exceed a single digit ratio when compared to compensatory damages generally do present constitutional problems. The Supreme Court has long recognized that greater ratios may comport with due process, however, when reprehensible conduct results "'in only a small amount of economic damages.'" *State Farm,* 538 U.S. at 425, 123 S. Ct. 1513 (quoting *Gore,* 517 U.S. at 582, 116 S. Ct. 1589).

> Our sister circuits agree that when a jury only awards nominal damages or a small amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount "would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter." *Kemp v. Am. Tel. & Tel. Co.,* 393 F.3d 1354, 1364–65 (11th Cir. 2004) (allowing punitive damages award of $250,000 accompanying compensatory damages of $115.05); *see also Abner v. Kan. City S. R.R.,* 513 F.3d 154, 165 (5th Cir. 2008) (affirming punitive damages award of $125,000 accompanying nominal damages of $1); *Mathias v. Accor Econ. Lodging, Inc.,* 347 F.3d 672, 674–78 (7th Cir. 2003) (affirming $186,000 punitive damages award accompanying compensatory damages of $5,000); *Lee v. Edwards,* 101 F.3d 805, 811 (2d Cir. 1996) (rejecting ratio analysis because "the compensatory award here was nominal, [so] *any* appreciable exemplary award would produce a ratio that would appear excessive by this measure"). Thus, we do not rely upon the challenged ratio to foreclose the punitive damages award here.

*Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 154 (4th Cir. 2008). If by some chance the Parkers cannot establish any actual damages, then punitive damages will still be appropriate. And they may be awarded above the ten-to-one ratio for which Freedom advocates, making its net worth entirely relevant and appropriately discovered.

And of course, Plaintiffs *have* suffered substantial actual damages. Freedom's fascination with the possibility that the Parkers may not have proven a specific credit application that was denied because of Freedom's misreporting is not informed by the established law in this field. For example, in a similar FCRA case decided by Judge Lauck, she rejected the same "no credit damage" assertion offered here, summarizing the law:

> The [United States Court of Appeals for the] Fourth Circuit has specifically affirmed awards of damages for emotional distress in FCRA cases." *Burke*, 2011 WL 1085874, at *8 (citing *Sloane*, 510 F.3d at 503–07). A plaintiff's testimony alone can support an emotional distress award when a plaintiff is able to "'reasonably and sufficiently explain the circumstances of [the] injury and [does] not resort to mere conclusory statements.'" *Sloane*, 510 F.3d at 503 (first alteration in original) (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996)); *see also Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) (holding that a plaintiff's damages evidence was sufficient to survive a motion for summary judgment when the plaintiff "allege[d] that he suffered

4

> emotional distress and loss of reputation" because "[d]amages for such injuries are recoverable under the FCRA.").

*Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 844 (E.D. Va. 2017) (alterations in original). Here, the Parkers have long ago disclosed—so Freedom obviously knows—that they have suffered objectively diagnosed and treated physical and mental-distress injuries because of the three-year ordeal with Freedom. Plaintiffs' treating healthcare providers gave detailed letters tying their treatment directly to issues caused by Freedom Mortgage. That is more-than enough, as the Court held in *Wood*:

> Even if the Court were to disregard Wood's testimony about his lost credit opportunities, or his declaration about the lost income from time he spent addressing his disputes with Credit One, Wood's evidence of emotional damages by itself could allow Wood to survive summary judgment. The signed, sworn statements in Wood's declaration and his deposition testimony describe "true demonstrable emotional distress," and are not simply conclusory statements. *See, e.g., Sloane*, 510 F.3d at 502 (affirming the district court's ruling that the jury's emotional distress award was "not an unreasonable conclusion from [the] evidence" because the jury could have found that the defendant's actions "directly led to the mounting frustration and distress that [plaintiff] felt for almost two years"). Wood's statements under oath detail damaged relationships, lost sleep, and feelings of shame, anger, fear, hopelessness, and frustration. In light of the clearly settled law in the Fourth Circuit on this issue, the Court must deny Credit One's Motion for Summary Judgment on the issue of damages.

*Wood,* at 845–46. Here, though acutely aware that Plaintiffs would seek damages based on such mental and emotional injury, Freedom did not explore those topics at all during Plaintiffs' depositions.

All of which brings the Court back to the simple reality that an FCRA consumer plaintiff is entitled to discover a FCRA defendant's net worth. Here there is zero burden. Zero harm to Freedom from production. There is a Protective Order in place. Freedom should either stipulate to the net worth offered or Plaintiffs' Motion should be granted.

5

## II. THE HOURLY RATE OF FREEDOM'S DISPUTE AGENTS IS NECESSARY TO ESTIMATE THE DEFENDANT'S COSTS PER DISPUTE.

There is little to say on this point. The FCRA caselaw uniformly holds that such evidence is relevant to determine the reasonableness of a defendant's dispute process, which is stated as a cost-benefit analysis between the cost of a lender's handling of a dispute weighed against the potential injury for the subject consumer. (*See* ECF 42 at 8–9); *see also Johnson v. MBNA Bank, N.A.*, 357 F.3d 426, 432–33 (4th Cir. 2004); *Beck v. Equifax Info. Serv., LLC*, No. 1:05-cv-347 (E.D. Va.) (Aug. 26, 2005 Hr'g Tr.); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 222 (3rd Cir. 1997); *DiPrinzio v. MBNA Am. Bank, N.A.*, No. 04-872, 2005 WL 2039175, at *10 (E.D. Pa. Aug. 24, 2005). Not one of Defendant's cited cases was considered under the statute here, the FCRA.

Defendant's response is remarkable as it entirely ignores the testimony of its own Rule 30(b)(6) witness, cited in Plaintiffs' opening brief. When Plaintiffs asked the witness what he would have to do to determine the cost incurred per credit reporting dispute, he volunteered that he would divide the hourly rate by the number of disputes per hour. (ECF 43 at 11.) Freedom does not substantively answer Plaintiffs' arguments, and Plaintiffs again rely on the same explanation and decisional authority cited in their opening brief.

Freedom's strangest argument is the attempt to use in its favor the Rule 26 proportionality standard. (ECF 62 at 8–9.) Not only was that objection never made until now, but there cannot possibly be any burden in simply allowing the dispute employees to state their hourly rate— testimony Freedom's counsel affirmative blocked with an instruction not to answer. (*See* ECF 43 at 12 (citing pertinent deposition testimony).) In fact, Freedom's Counsel instructed his witnesses to not answer stating that he was doing so pursuant to Rule 30(c)(2), in order to allow his client the opportunity to file the required motion for a protective order. FED. R. CIV. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to

6

enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). This statement was repeated across multiple depositions, each time Freedom's counsel instructed the witness not to answer. (*See* ECF 43 at 12; Ex. 1, Cambron Dep. at 15:2–7; Ex. 2, Flores Dep. at 17:13–20, 83:5–15.) Despite Freedom's using this tactic repeatedly to avoid disclosure and Plaintiffs' good-faith belief that such a response was genuine, no such motion was ever filed.

### III. FREEDOM MUST FAIRLY BE COMPELLED TO TURN OVER ITS RECORDINGS OF TELEPHONE CALLS WITH THE PLAINTIFFS.

Freedom does not deny that it has these phone calls and has not ever objected in producing them based on burden. It had to have hoped that Plaintiffs would never learn of their existence, which is likely the reason no such objections or withholding statements were ever made. Now though, rather than oppose the merits of the discovery motion, Freedom contends that it need not produce them because it believes more time should have been spent by Plaintiffs meeting and conferring. This is nonsensical.

Plaintiffs did not even know that these recordings existed until Freedom's Rule 30(b)(6) witness let slip that they were available. Then and there—on the record—Plaintiffs' Counsel conferred with Freedom's Counsel and asked for the Freedom to supplement with the referenced recordings:

> **Q.** Now, on the same document, Exhibit 8, Bates number -593, do you see in March -- March 2nd, 2016, the borrower, Ms. Parker, wanted to know why her balance is not updated; informed her she is tax exempt. Do you see that?
>
> **A.** I do.
>
> **Q.** And what does that mean?
>
> **A.** I would have to listen to the call to understand what the full conversation was about.
>
> **Q.** Do you retain these calls?

7

> **A.** We do retain a hundred percent of our calls.
>
> **MR. BENNETT:** Counsel, why haven't we received any of these?
>
> **MR. BUZZETTA:** I'd have to go back and look at the discovery requests.
>
> **MR. BENNETT:** We asked for all communications with the plaintiff; that would count. Can you get us those phone calls?
>
> **MR. BUZZETTA:** I can look into it.

(Ex. 3, Freedom Rule 30(b)(6) Dep. at 52:25–53:18.) That more than satisfies Local Rule 37.

Defendant's position here is also disingenuous. Last week, the undersigned spoke with Freedom's Lead Counsel, Mr. Buzzetta, and again asked about the calls. Freedom's Counsel responded that Freedom was intending to state in its Opposition to this Motion that it was intending to produce the recordings. Obviously that statement was not correct.[1]

### IV. FREEDOM HAS NEVER SERVED A PRIVILEGE LOG (LET ALONE A TIMELY ONE) SO IT CANNOT NOW REDACT FOR PRIVILEGE.

Freedom's opposition to providing unredacted documents raises two inapposite points: (1) Plaintiffs filed their Motion to Compel too late, and (2) the redactions are appropriate because they shield privileged information. (ECF 62 at 13–14.)

**A.    The Court's Scheduling Order Sets No Deadline For Motions To Compel.**

As to the first point, Freedom has nothing on which to base a claim that Plaintiffs waited too long to file their Motion. While some courts warn litigants that motions to compel must be filed such that they may be heard and any compelled production take place before the expiration of the discovery period, the Scheduling Order in this case sets no such timeline. (*See generally*

---

[1] Freedom instead takes the deception and misdirection further in its brief, explaining that "[d]espite numerous emails from Plaintiffs' counsel after that deposition, they did not raise the issue of Freedom Mortgage's production of the recordings prior to filing the instant motion." (ECF 62 at 12.) That is of course incorrect—Plaintiffs raised the issue of production during the deposition of Freedom's Rule 30(b)(6) witness, as the above-cited exchange confirms. Suffice it to say, statements like this from Freedom are all the Court needs to understand the difficulties Plaintiffs have encountered during discovery.

8

ECF 16.) The Scheduling Order sets out a detailed account of what must take place during the discovery period, but does not include the filing of motions to compel among those events. (*See id.* ¶ 3.) And where the Scheduling Order discusses motions specifically, it does not address motions to compel. (*See id.* ¶ 9.) There is therefore no genuine basis to claim untimeliness.[2]

What is more, any supposed delay or untimeliness in filing is due to Freedom's recalcitrance and Plaintiffs' good-faith belief that Freedom would stand by its Counsel's representations. As explained above, regarding the supposed protective order to come on the issue of investigator pay or the production of long-overdue phone call recordings, Freedom has taken every opportunity to trick Plaintiffs into accepting statements that Freedom knew it would never abide by. The delay in discovery is therefore built-in by Freedom's conduct. And as Plaintiffs discuss fully below, Freedom never served a privilege log that would allow Plaintiffs to discern whether any claims of privilege relating to the redactions was sincere. To now claim that a delay is somehow Plaintiffs' fault is simply inaccurate based on the established record. The Court should grant these arguments no weight.

B.  **Freedom Has Waived Any Claims Of Privilege By Never Serving A Privilege Log.**

Courts in this District demand that claims of privilege be supported by an adequate privilege log, as Rule 26 envisions. *Sectek Inc. v. Diamond*, No. 1:15-cv-1631 (GBL/MSN), 2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016). While there may be disagreement among courts as to when such a log must be filed to be considered timely, *id.* at *2–3, the complete failure to file any privilege log falls outside that sphere of debate. In that instance, a finding of waiver is the accepted,

---

[2] The lone case Freedom cites for this argument, *Flame S.A. v. Industrial Carriers, Inc.*, No. 2:13-cv-658, 2014 WL 12547260, at *2 (E.D. Va. July 31, 2014), is distinguishable because in that case the motion to compel under consideration came after the Court had already continued the trial date and modified the scheduling order, so the Court was understandably frustrated by a further attempt to extend the case schedule so close to trial. *See id.* at *2–3. Here, nothing like that is in play.

and appropriate, outcome. *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 273 (E.D. Va. 2004) (finding waiver where the privilege holder failed to provide an adequate privilege log); *United States v. $43,660.00 in U.S. Currency*, No. 1:15-cv-208, 2016 WL 1629284, at *5 (M.D.N.C. Apr. 22, 2016) (addressing Rule 26(b)(5)(A) and noting "[f]ailing to timely assert a privilege results in its waiver"); *Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-cv-352-F, 2011 WL 761480, at *4 (E.D.N.C. Feb. 24, 2011) (holding that the failure to provide a privilege log "serves as an additional, independent ground upon which defendant waived any privilege it had").

Freedom's discovery responses are replete with objections based on the supposed existence of a privilege or protection. (Ex. 4, Freedom's Resps. to Plts.' RFPs, RFPs 2, 3, 7, 9, 12, 18, 19, 21, 23, 24, 26, 32, 41.) Despite this abject over-assertion of privilege, Freedom never served a privilege log, *has still not served one despite being on notice due to Plaintiffs' Motion*, and does not deal at all with the failure to serve a log. Freedom instead misdirects, claiming that it had good reason to redact what it did. (ECF 62 at 14.) But that misses the point entirely—the purpose of the log is to permit Plaintiffs and the Court the opportunity to view the claim of privilege in the first instance, to determine if a challenge is appropriate. *Hughes v. Sears, Roebuck & Co.*, No. 2:09-cv-93, 2010 WL 4978996, at *6 (N.D.W. Va. Dec. 2, 2010). Freedom has robbed Plaintiffs of this opportunity, and has done so willingly.

The Court should likewise reject Freedom's attempt to justify its privilege assertion in its opposition brief. Not only is such not permitted by Rule 26, but Freedom's bland descriptions of what has been redacted are essentially meaningless. (*See* ECF 62 at 14.) Under similar circumstances, the *Hughes* court found the privilege waived:

> Here, Sears has provided no basis on which the Court may evaluate Sears's claim of privilege, nor have Plaintiffs been allowed an adequate opportunity to respond

> to potentially privileged documents. Sears cannot rely on conclusory statements in its Response that "there may be privileged material that Sears would then identify and place on a privilege log" as a proper response to a legitimate discovery request. Accordingly, this Court finds Sears's generalized objections and non-existent privilege log insufficient to properly oppose Plaintiffs' discovery requests.

*Hughes*, 2010 WL 4978996, at *6. Given the similarities of Freedom's conduct, there is no true reason for a different result here. The Court should therefore grant Plaintiff's Motion.

        Respectfully submitted,

        **PLAINTIFFS James Parker II and Debra Parker**

        By: /s/
        Leonard A. Bennett, VSB #37523
        Craig C. Marchiando, VSB #89736
        Elizabeth W. Hanes, VSB #75574
        **CONSUMER LITIGATION ASSOCIATES, P.C.**
        763 J. Clyde Morris Blvd., Ste. 1-A
        Newport News, VA 23601
        Telephone: (757) 930-3660
        Facsimile: (757) 930-3662
        Email: lenbennett@clalegal.com
        Email: craig@clalegal.com
        Email: elizabeth@clalegal.com

        ***Counsel for the Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2019, I will cause a true and correct copy of the foregoing to be filed electronically using the CM/ECF system, which will then send a notification of such filing to all Counsel of Record.

/s/
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com