IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
**(Newport News Division)**

| | |
|---|---|
| JAMES T. PARKER, II, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No: 4:18-cv-00140-HCM-DEM |
| ) | |
| FREEDOM MORTGAGE ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### REPLY IN SUPPORT OF DEFENDANT FREEDOM MORTGAGE'S MOTION TO COMPEL HIPAA AUTHORIZATIONS FOR THE RELEASE OF PLAINTIFF'S MEDICAL RECORDS

Defendant Freedom Mortgage Corporation ("Freedom Mortgage"), by and through counsel, submits this Reply in further support of its Motion to Compel HIPAA Authorizations for the Release of Medical Records ("Motion to Compel").

**I.     ARGUMENT IN REPLY**

Plaintiffs focus on the timing and format of the discovery request at issue in hopes that the Court will not notice the Plaintiffs' conduct which necessitated the instant motion. A review of the record demonstrates that Freedom Mortgage requested Mr. Parker's medical records, Plaintiffs agreed to produce them without objection, and then failed to do so.

Freedom Mortgage requested "If You contend that you experienced any sort of physical, mental or emotional distress as a result of any alleged action or inaction of Freedom Mortgage, produce the medical records of all primary care physicians, specialists or any other medical professionals or providers that have treated You from June 1, 2017 to the present, in connection with such alleged physical, mental or emotional injuries." *See* Dkt. 35-4 at p. 17. Plaintiffs did

not object but responded "Plaintiffs are not in possession of the documents sought in this request at this time, ***however, Mr. Parker is obtaining this information and this request will be supplemented***." Id. (emphasis added).[1]

Plaintiffs then supplemented this response with two self-serving letters which appear to have been drafted by counsel concerning Mr. Parker's medical conditions. Id. Plaintiffs' supplemental response did not state these letters, which were not even medical records, were the only documents they would produce, nor that they had completed their production of responsive documents. Indeed, Plaintiffs did not supply any further medical records, and they never stated that they would no longer seek to have Mr. Parker's identified treating physicians supply them.

Likewise, Freedom Mortgage requested "all documents that relate to, or refer to or otherwise evidence your contentions in Paragraphs 34, 41, 56, 73 and 81 of the Complaint that You suffered damage to reputation, embarrassment, humiliation and emotional distress." Id. at p. 16. Again, not only did Plaintiffs not object, they responded "Plaintiffs are not in possession of the documents sought in this request at this time, however, Mr. Parker is obtaining this information and this request will be supplemented." Id. (emphasis added). However, Plaintiffs never supplemented this response.

Plaintiffs failed to object to these requests and instead told Freedom Mortgage that they would supplement their responses with the responsive documents. Not once did Plaintiffs convey that their position was these records were not under their control and that Freedom Mortgage would have to seek the documents from the providers directly.

---

[1] Freedom Mortgage also requested "All documents relating or referring to whether You suffered mental distress, embarrassment, humiliation, emotional anguish, mental anguish, mental distress or any similar types of injury as a result of the conduct alleged in this lawsuit, including treatment records, prescriptions, diagnosis, invoices, statements or bills from doctors, counselors, therapists or other persons that provided treatment as a result of such alleged injury." *Id.* at p. 18. Again Plaintiffs did not object and incorporated a response stating they would supplement the response. The documents in question are also responsive to Requests 1 and 8, to which Plaintiffs also did not object.

Thus, Freedom Mortgage had no reason to believe that Mr. Parker's medical records would not be produced given that Plaintiffs represented that they would obtain the documents. Nor did Freedom Mortgage have reason to believe that Plaintiffs objected to the production of these documents. Plaintiffs only represented that they were not in their possession, but that they would supplement their production. Furthermore, Plaintiffs did continue to supplement their production through additional Rule 26 disclosures with document productions on July 30 and September 12.

As Freedom Mortgage's fact discovery deadline approached, it became clear to Freedom Mortgage that Plaintiffs would not comply with their discovery obligations to produce the relevant medical records. Understanding that seeking these records from Mr. Parker's medical providers without a HIPAA authorization was impossible, Freedom Mortgage requested that Mr. Parker execute an authorization on September 5.[2] *See* E-mail chain with Plaintiff's counsel attached hereto Exhibit 1. Plaintiffs' counsel requested the underlying subpoenas which would accompany the request, and Freedom Mortgage provided them on September 6. Id. Plaintiffs' counsel response was simply "These are ridiculously overbroad. We will serve our objections in a timely manner." Id. In keeping with Freedom Mortgage's meet and confer obligation, Freedom Mortgage sent an email asking if a compromise could be reached as to language or scope. Id. Plaintiffs' counsel never responded. Having not received a response, on September 13, undersigned counsel notified Plaintiffs' counsel by telephone that Freedom Mortgage would

---

[2] Plaintiffs' argument that Freedom Mortgage was required to serve the subpoenas and permit parties to object without a HIPAA release is nonsensical. As the courts in this circuit recognized when they have compelled parties to provide such releases, no medical provider will simply break the law and supply medical records in response to a duly issued subpoena without a release. *See, e.g., Virga v. Arnold Shapiro Productions, Inc.*, No. 3:15-cv-4323, 2017 WL 191490, at *2 (D. S.C. Jan. 18, 2017); *Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc,*. No. 3:08-CV-495, 2009 WL 4062881 (W.D. N.C. Nov. 20, 2009); *Shoemake v. Eli Lilly & Co.*, No. 5:13-CV-013, 2014 WL 683765 (W.D. N.C. Feb. 20, 2014); *Teague v. Target Corp.*, No. 306-CV-191, 2006 WL 3690642, at *2 (W.D .N.C. Dec. 11, 2006).

move to compel for the authorizations before its fact discovery deadline closed, but that it would be willing to withdraw the motion if Plaintiffs could come to an agreement on the language. Again, Plaintiffs' counsel never responded.[3] Instead, Plaintiffs' counsel takes a completely false and unsupported position that no meet and confer occurred.[4]

The record concerning these requests is clear. Freedom Mortgage sought relevant medical records since Plaintiffs' affirmatively plead and allege that Mr. Parker's medical condition and mental health have been adversely affected as a result of Freedom Mortgage's actions. Compl. ¶¶ 34, 41, 56, 73 and 81.[5] Indeed, the need for these records was reinforced during Mr. Parker's deposition on September 11. As the transcript supplied in Plaintiffs' Opposition demonstrates:

- Mr. Parker suffered attacks exacerbating his multiple sclerosis prior to interacting with Freedom Mortgage (Dkt. 58-2 at 23:12-19);

- However, he could not recall if he also had an exacerbating attack during his prior dispute with Freedom Mortgage (Id. at 35:6-21);

- He had been seeing his therapist for issues prior to interacting with Freedom Mortgage (Id. at 25:7-26:25; 173:2-9); and

- However, he could not testify as to how long he had been seeking treatments without seeing the records himself (Id. at 26:23-27:2).

---

[3] Plaintiffs' counsel's only response was made on September 15 – after the motion had been filed – when he stated that "Given how late in the discovery period you asked about these records, I am not sure what anyone can do to assist you. If you have served these, they are with less than the required 30 days to respond." Again, this response ignores that Freedom Mortgage requested these documents at the outset of discovery, Plaintiffs agreed to produce them and simply never followed through with their obligation.

[4] As the attached emails demonstrate, Freedom Mortgage's counsel repeatedly sought an explanation for the objections and offered to amend the releases prior to filing the instant motion. Plaintiffs' counsel simply attempted to run out the clock on the discovery period rather than provide a substantive response.

[5] Further, Plaintiffs affirmatively stated in responses to Interrogatories that "Mr. Parker has MS and the stress that Defendant has caused upon Plaintiff aggravated the Plaintiff's condition, further. Plaintiff has been prescribed additional medicines to help Plaintiff cope with the added stress caused by Defendant. The additional stress has caused Plaintiff's condition to worsen. In addition, Plaintiff was caused to have to seek additional visits with his Therapist." *See* Dkt. 35-3 at p. 30.

4

Thus, absent production of these records, Freedom Mortgage has no way of determining whether Mr. Parker has merely been dealing with pre-existing conditions which existed long before the facts of this case and are unrelated to Freedom Mortgage or whether there were exacerbating factors or causes other than Freedom Mortgage which impacted his condition.

Plaintiffs violated their discovery obligations by failing to produce the documents, and compounded their breach by refusing to execute a HIPAA compliant authorization so that Freedom Mortgage could obtain the records themselves.[6] Each of Plaintiffs arguments in opposition to this motion is undercut by the fact that Plaintiffs *agreed without objection to produce the documents*. Plaintiffs do not offer a single case in their opposition where a party agreed to produce relevant medical records without objection, then failed to do so. Plaintiffs waived any objections to these records when they failed to object in discovery and thus any arguments regarding scope and relevance of the requests are immaterial. Freedom Mortgage had no alternative but to seek to compel authorizations once it became clear Plaintiffs would not produce the documents despite the clear issues raised in Mr. Parker's deposition.

Plaintiffs clearly placed Mr. Parker's medical condition at issue, agreed to produce records from his providers concerning his treatment, and then failed to produce them. Freedom Mortgage is entitled to these documents. Plaintiffs' arguments that the request was neither formal, nor timely, fail. Furthermore, Plaintiffs' objections to the scope of the requests should be ignored since they were previously waived. Plaintiffs provide no basis for the Court to deny the relief requested.

---

[6] Plaintiffs' conduct renders any medical evidence subject to exclusion under Rule 37, and Freedom Mortgage expressly reserves the right to bring an appropriate motion. The record is clear that Plaintiffs have attempted to run out the clock before trial instead of complying with their discovery obligations to produce relevant documents. Indeed, as trial is now just 18 days away, Freedom Mortgage has been substantially prejudiced in its ability to prepare accordingly.

### A. Freedom Mortgage's Requests For Records And Motion Were Proper And Timely.

Freedom Mortgage first requested the documents at issue in its Request for Production on February 12, 2019. As demonstrated, Plaintiffs reported that the documents were not in their possession, but represented they would supplement their production with responsive documents without objection. Indeed, Plaintiffs did obtain a letter from each provider which was produced on May 15, 2019, evidencing that they could obtain the documents. In any event, Plaintiffs' arguments that a subpoena was first required to render this a formal request are meritless, since the records were formally requested through discovery.[7] Likewise, Plaintiffs' attempt to distinguish Freedom Mortgage's authorities fails since Freedom Mortgage made formal requests for the documents, and Plaintiffs agreed to produce them without objection.

Indeed, Plaintiffs make no effort in their opposition to explain why they were unable to obtain the records. Any such arguments fail, because a party can obtain its own medical records from its provider. *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 580 (D. Md. 2010) ("As to Plaintiff's medical records, they are within her possession and control and therefore discoverable under Rule 34(a)(1), if relevant."); *Testerman v. Procter & Gamble Mfg. Co.*, No. CIV. CCB-13-3048, 2015 WL 151370, at *2 (D. Md. Jan. 9, 2015) ("A plaintiff's medical records are within her possession and control and are therefore discoverable under Rule 34(a)(1), if relevant.");

---

[7] In any event, Plaintiffs' offered authorities are easily distinguished from this matter. *See e.g., MAO-MSO Recovery, LLC v. Mercury Gen.*, No. 17-CV-0252, 2019 WL 4277802, at *2 (C.D. Cal. July 29, 2019) (distinguishable by the fact that this matter involved a class action relating to medical reimbursements, not damages sustained by a particular plaintiff; also, rather than denying a motion to compel, the court actually granted it, stating that "Plaintiff's new requests . . . are narrower and more tailored to the needs of the case than the original RFP"); *Kraus v. Alcatel-Lucent*, No. CV 18-2119, 2019 WL 3304696, at *6 (E.D. Pa. July 22, 2019) (distinguishable in that the records requested were not medical records requiring a HIPAA release); *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *6 (D. Kan. June 12, 2019) (distinguishable in that case involved RICO claims, not medical records); *Harding v. Town of Greenwich*, No. 3:08-CV-956, 2010 WL 4681250, at *2 (D. Conn. Nov. 4, 2010) (distinguishable in that the case did not involve a HIPAA release, nor was there also a formal request by which a party agreed to produce the documents)

*Marshall v. Univ. of Maryland Med. Ctr.*, No. CV TDC-17-2779, 2018 WL 3727947, at *4 (D. Md. Aug. 6, 2018) ("Courts have held that a party has control over his medical records because, by either granting or denying consent, he may determine who shall have access to them. Marshall should obtain and produce the records.") Here, Plaintiffs can obtain their records, and they have sought to block their production – despite having agreed to produce them without objection – by failing to produce them, and then denying Freedom Mortgage access by failing to provide an executed authorization for their release.

Plaintiffs' argument that the present motion is untimely is comical given that Plaintiffs filed a motion to compel three days *after* this instant motion, and they have taken the position in this case that their later filed motion was timely. *See* Dkts. 42 and 63 at p. 9-10. Plaintiffs unfairly prejudiced Freedom Mortgage when they failed to produce these documents after they agreed to do so. While such prejudice to Freedom Mortgage's discovery efforts cannot be remedied, Freedom Mortgage took steps to see that it would not be prejudiced for trial by attempting to obtain the records from the providers themselves. Freedom Mortgage further made such an attempt before the expiration of its fact discovery deadline in this case. In contrast, Plaintiffs filed a motion to compel 35 days after the deadline for Plaintiffs' fact discovery. Plaintiffs simply have no basis for arguing that Freedom Mortgage's motion, filed prior to the expiration of its fact discovery deadline, is untimely given that the timing was created by Plaintiffs' failure to produce the documents. Plaintiffs indicated for almost six months that the records would be produced. Having failed to do so, they now improperly seek to block Freedom Mortgage's attempt to obtain the documents. This transparent attempt to prejudice Freedom Mortgage's ability to analyze Plaintiffs' claim for damages should be rejected.

### B. Plaintiffs Lack Any Basis To Oppose Freedom Mortgage Obtaining The Records They Agreed To Produce

Plaintiffs' present protestations regarding the sensitivity of the records and protections concerning their productions fail since Plaintiffs agreed to produce the documents without objection. Plaintiffs cannot now insert objections that they previously waived. As Plaintiffs note, once a formal request for documents has been made, the responding party is then allowed thirty days to respond or object. Fed. R. Civ. P. 34(b)(1)(C). Here, the requests were served on February 12, 2019. Plaintiffs responded to the relevant requests without objection on March 14, 2019. Thus, Plaintiffs have waived any objections to the production of these documents. *See Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528 (S.D. W.Va. 2007) (finding failure to state an objection to a document request an implicit waiver); *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 477 (M.D.N.C. 1990) ("It is well settled that failure to make a timely objection in response to a Rule 34 request results in waiver."); *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 258 (M.D.N.C. 2001) (objections to Rule 34 requests are implicitly waived when not asserted in discovery responses). Furthermore, Plaintiffs cannot object now to a pending motion to compel when they failed to do so to the requests concerning the same documents. *See Alston v. Equifax Info. Servs., LLC*, No. CIV.A. TDC-13-1230, 2015 WL 1807952, at *2 (D. Md. Apr. 17, 2015) (finding that where a party failed to supply information underlying its burden objection for over six months, it had waived the right to use that information in opposition to a motion to compel).

Even if Plaintiffs had not waived any and all objections, each of Plaintiffs' authorities supporting their waived objections as to the relevance and scope of Mr. Parker's records are

readily distinguished.[8] And as Plaintiffs' own offered authorities recognize "Depriving a defendant of that crucial evidence, while allowing a plaintiff to seek damages for emotional distress and simultaneously seek cover under a claim of privilege would simply be contrary to the most basic sense of fairness and justice and would essentially amount to a windfall for the plaintiff." *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 224–25 (D.N.J. 2000).

Moreover, Plaintiffs rely heavily on the reasoning in *Tims v. Clark Cty. Sch. Dist.*, No. 218CV00021JADVCF, 2019 WL 3210063, at *1 (D. Nev. July 16, 2019). *See* Dkt. 58 at 8-9. However, Plaintiffs misstate the facts of that case. The request for the records at issue were for a prior party who was now a non-party – thus the court was considering whether the mental health records of a party's mother, someone who was no longer advancing a claim, were relevant to the

---

[8] *See, e.g., Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 126 (E.D. Va. 2009). In that matter, the court found the "subpoena to be overbroad" where "Defendant's subpoena to [the doctor] seeks the complete medical records, excluding nothing, relating to Plaintiff from January 1, 1998, through the present" and Plaintiff had already "given Defendant her medical records for 2007." However, the court held that it would "permit Dr. Madjic to produce only those medical records relating to Plaintiff's emotional distress claims. Because her deposition testimony indicates that her anxiety condition may pre-date the debt collection incident, Defendant may fairly be entitled to sufficient records so as to establish a baseline of Plaintiff's emotional condition at the time of the incident." The court also modified the subpoena to "require production of any and all records relating to Plaintiff's mental and emotional state for the two years prior to the filing of this federal action."; *Vasconcellos v. Cybex Int'l, Inc.*, 962 F. Supp. 701, 708 (D. Md. 1997) (the court permitted the moving party to bring a new subpoena where it could demonstrate that the subpoena was the only method to obtain relevant information which had been placed at issue); *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 224–25 (D.N.J. 2000): (recognizing that a defendant against whom a claim of emotional distress has been asserted is helpless in mounting an adequate defense without all the relevant evidentiary materials and noting that "the plaintiff's mental health records are certainly an integral and indispensable component of any such defense. Depriving a defendant of that crucial evidence, while allowing a plaintiff to seek damages for emotional distress and simultaneously seek cover under a claim of privilege would simply be contrary to the most basic sense of fairness and justice and would essentially amount to a windfall for the plaintiff."); *In re Renfrow*, No. 17-10385-R, 2019 WL 2240902, at *7 (Bankr. N.D. Okla. May 22, 2019) (the court only denied a motion to compel medical records where plaintiff had already permitted access to his therapist's notes and treatment records); *Jaffee v. Redmond*, 518 U.S. 1, 1, 116 S. Ct. 1923, 1924, 135 L. Ed. 2d 337 (1996) (mental health was not at issue as the parties were seeking factual admissions in the therapists records); *Karrani v. JetBlue Airways Corp.*, No. C18-01510-RSM, 2019 WL 2269818, at *2 (W.D. Wash. May 28, 2019) (recognizing that a plaintiff waives privilege concerning medical records by alleging more complex distress, including any specific psychiatric injury or disorder, or unusually severe distress); *Griggs v. Weiner*, No. CV-13-3885 JFB AYS, 2015 WL 6455298, at *3 (E.D.N.Y. Oct. 26, 2015) (the matter did not involve a claim for emotional damages rendering the medical records relevant); *Koch v. Cox*, 489 F.3d 384, 388 (D.C. Cir. 2007) (the case did not involve a claim where Plaintiff claimed emotional distress caused treatment).

claimed damages of the minor plaintiff. *Id*. at 2-3. That is not even remotely the case here, where the records at issue are for the Plaintiff himself, and he certainly has not dismissed his claim.

Accordingly, Plaintiffs fail to offer any authority supporting their position that Freedom Mortgage cannot obtain relevant medical records for Mr. Parker from his two providers, which Plaintiffs agreed to produce without objection, but failed to do so.

## II.     CONCLUSION

For all the foregoing reasons, Defendant Freedom Mortgage Corporation respectfully requests the entry of an Order: (a) granting Freedom Mortgage's Motion to Compel HIPAA Authorizations for the Release of Medical Records; and (b) granting such further relief in favor of Freedom Mortgage as this Court deems necessary and just.

Respectfully submitted,

/s/  *Walter Buzzetta*
Walter J. Buzzetta, Esq. (68006)
STRADLEY RONON STEVENS & YOUNG, LLP
2000 K Street, NW, Suite 700
Washington, D.C.  20006
(202) 507-6407 (direct) / (202) 822-0140 (fax)
wbuzzetta@stradley.com

and

Andrew K. Stutzman, Esq. *(admitted pro hac vice)*
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 1600
Philadelphia, PA 19103
215-564-8008 (direct) / 215-564-8120 (fax)
astutzman@stradley.com

*Attorneys for Defendant*
*Freedom Mortgage Corporation*

Date:  October 3, 2019

# 4278961

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2019, I caused the foregoing Reply to be electronically filed with the Clerk of the Court, which caused it to be served on all counsel of record.


/s/ *Walter Buzzetta*
Walter J. Buzzetta

# 4278961